# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| CHARMAINE T. FOWLKES,<br><br>      Plaintiff,<br><br>v.<br><br>JOHNNY CABRAL, KRISTAN YOUNG SORRELL, and ASHLEY TANNER,<br><br>      Defendants. | Case No. 18-CV-231-JPS<br><br>**ORDER** |

  Plaintiff Charmaine T. Fowlkes ("Fowlkes"), proceeding *pro se*, filed a complaint in this matter and a motion for leave to proceed *in forma pauperis*. (Docket #1, #2). In order to allow a plaintiff to proceed without pre-paying the $400.00 filing fee, the Court must first decide whether the plaintiff has the ability to pay the filing fee and, if not, whether the lawsuit states a claim for relief. 28 U.S.C. §§ 1915(a), (e)(2)(B).

  On the question of indigence, although Fowlkes need not show that she is totally destitute, *Zaun v. Dobbin*, 628 F.2d 990, 992 (7th Cir. 1980), it must be remembered that the privilege of proceeding *in forma pauperis* "is reserved to the many truly impoverished litigants who, within the District Court's sound discretion, would remain without legal remedy if such privilege were not afforded to them," *Brewster v. N. Am. Van Lines, Inc.*, 461 F.2d 649, 651 (7th Cir. 1972). Fowlkes' motion states that she is unemployed and her only income is $300.00 per month for child support. (Docket #2). She has one dependent, a fifteen-year-old daughter. *Id.* Her monthly expenses total about $1,800.00. *Id.* Her only asset is a car worth approximately $3,500.00, and she has considerable student debt. *Id.* In light of these representations, the Court finds that Fowlkes is indigent for

purpose of prepaying the filing fee. She will be granted leave to proceed *in forma pauperis*.

Notwithstanding the payment of any filing fee, however, when a plaintiff asks leave to proceed *in forma pauperis*, the Court must screen the complaint and dismiss it or any portion thereof if it has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 900 (7th Cir. 1997). The Court may dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327.

To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [she] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). It is not necessary to plead specific facts; rather, the plaintiff's statement need only "give the defendant fair notice of what the…claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing

*Twombly*, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).

It appears from Fowlkes' complaint that she was previously employed by Amazon.com from her residence in Wisconsin. (Docket #1 at 3). She alleges that around September 2017, Johnny Cabral ("Cabral"), who apparently lives in Arizona and also worked for Amazon.com, possibly as Fowlkes' supervisor, began harassing her by installing malware on her "personal devices, laptop, cellphones, [and] iPads." *Id.* He "scanned" Fowlkes' personal devices and started routing calls to Fowlkes' telephone using a program that would change the area code of the incoming call. *Id.* He also accessed Fowlkes' home network, the network of her other employer (who Fowlkes does not name), and the network of the Wauwatosa Library, where she would go on a regular basis to work. *Id.* at 3–4. In those networks, Cabral added rights as an administrator that allowed him to view, add, modify, delete, move, and block any work that Fowlkes performed. *Id.* at 4. He apparently used this access to disrupt Fowlkes' work. *Id.* Cabral also used Fowlkes' passwords without permission to access Fowlkes' personal information. *Id.*

In January 2018, Fowlkes was assigned a new supervisor, Ashley Tanner ("Tanner"), who lives in Washington state. *Id.* at 2, 4. Tanner facilitated Cabral's continued access to Fowlkes' computer so that he could continue harassing Fowlkes. *Id.* at 4. One reason Fowlkes knows this to be true is that she had one-on-one telephonic meetings with Tanner but the calls would include three attendees, with the third person presumably being Cabral. *Id.* Tanner also informed Fowlkes that Cabral decided Fowlkes would not receive a merit pay increase. *Id.*

Also in January 2018, Fowlkes reached out to Kristan Young Sorrell ("Sorrell"), whose title is unclear but who lives in West Virginia, and informed her of Cabral's harassment and the pay increase issue, but Sorrell said there was nothing she could do. *Id.* at 2, 4–5. Fowlkes also asked Sorrell about the company's policy regarding access of personal devices during non-work hours, and Sorrell assured Fowlkes that the company's policy did not allow for that type of access. *Id.* at 5. Sorrell assured Fowlkes that no one had accessed or scanned her devices. *Id.*

Finally, in February 2018, Fowlkes went the library to work on her computer, and noticed her business website "being altered, letters deleted, colors changing, boxes moved out of place." *Id.* She immediately reported the incident to the Wauwatosa Police Department, and then went back to the library to finish her work. *Id.* When she opened her laptop, she saw that Cabral was "scanning [her] personal laptop." *Id.* Fowlkes notified Sorrell, who called Fowlkes and said she was opening an investigation. *Id.* Sorrell told Fowlkes to stop working while they completed their investigation. *Id.*

A few days later, Fowlkes tried to log on to her work computer and discovered she had no access authority. *Id.* She called Amazon.com and was informed that she had been suspended, but she does not know the reason for her suspension. *Id.* Fowlkes seeks $100,000 in damages and the termination of defendants' employment with Amazon.com. *Id.* at 6. She also asks that her status with Amazon.com be restored to employee in good standing. *Id.*

Fowlkes does not indicate the statute or law under which she believes her claims arise. Given that the thrust of her complaint centers on alleged computer harm, the Court finds that the most suitable avenue for relief would be under the Computer Fraud and Abuse Act ("CFAA"), 18

U.S.C. § 1030. Fowlkes' allegations approach sufficiency to state a claim under the CFAA, but her pleading requires amendment before the Court can determine if her case can proceed on that claim.

The CFAA prohibits any person from, among other things: (a) "access[ing] a protected computer without authorization" so as to perpetuate a fraud and "obtain anything of value"; (b) knowingly "caus[ing] the transmission of a program, information, code or command" so as to intentionally cause damage to a protected computer; or (c) accessing a protected computer without authorization, in a manner that causes "damage" to the computer. *Id.* § 1030(a)(4), (a)(5). A "protected computer" is broadly defined as any computer "used in interstate or foreign commerce or communication." *Id.* § 1030(e)(2)(B).

Originally a criminal statute, the CFAA now provides a civil remedy as well. *Id.* § 1030(g). Specifically, the Act states that "[a]ny person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." *Id.* The term "damage" is defined as any act that causes "impairment to the integrity or availability of data, a program, a system or information." *Id.* § 1030(e)(8). The term "loss" includes "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." *Id.* § 1030(e)(11).

Finally, a civil action for a violation of the CFAA may be brought only if the alleged misconduct involves one of the following factors of harm:

>   (I) loss to 1 or more persons during any 1-year period (and, for purposes of an investigation, prosecution, or other proceeding brought by the United States only, loss resulting from a related course of conduct affecting 1 or more other protected computers) aggregating at least $5,000 in value;
>
>   (II) the modification or impairment, or potential modification or impairment, of the medical examination, diagnosis, treatment, or care of 1 or more individuals;
>
>   (III) physical injury to any person;
>
>   (IV) a threat to public health or safety; [or]
>
>   (V) damage affecting a computer used by or for an entity of the United States Government in furtherance of the administration of justice, national defense, or national security[.]

*Id.* § 1030(c)(4)(A)(i); *see also id.* § 1030(g). Damages for a violation "involving only conduct described in subsection (c)(4)(A)(i)(I) are limited to economic damages." *Id.* § 1030(g).

Fowlkes alleges that she used her computer in interstate commerce or to communicate across state lines, and therefore her allegations are sufficient to establish that her computer was a "protected computer" for purposes of the CFAA. On the other elements of a CFAA claim, Fowlkes' allegations fall short. For example, she has not alleged that Cabral intended to defraud her or that he "obtain[ed] anything of value" through his unauthorized access to her computer. *Id.* § 1030(a)(4). Nor has she plausibly alleged that Cabral's alleged intrusion into her computer was unauthorized, given that she alleges he was her supervisor and the data he allegedly accessed was work-related. *Id.* § 1030(5).

More fundamentally, Fowlkes has not sufficiently alleged harm. The subsection of the CFAA that provides a civil cause of action makes clear that a plaintiff must allege one of the "factors" of harm outlined in Section

1030(c)(4)(A)(i), and Fowlkes has not done so. The only factor of harm set forth in Section 1030(c)(4)(A)(i) that could plausibly fit the facts here is subsection (I), under which Fowlkes must allege that she suffered at least $5,000 in economic damages within one year. *Id.*; 18 U.S.C. § 1030(g). Fowlkes has not alleged that any of the defendants' acts caused her any economic harm whatsoever. Though she seeks $100,000 in damages, Fowlkes has not explained those damages in any detail or alleged that those damages are in any way connected to the defendants' misconduct. Presumably, Fowlkes seeks compensation for having been suspended from Amazon.com, but she does not allege that the defendants' conduct caused her suspension; in fact, she alleges that she does not know the reason for her suspension. Fowlkes must specifically allege damages as well as an explanation for how the defendants' conduct caused them. She cannot state a claim on inference alone. *See Tamlyn v. BlueStone Advisors, LLC*, No. 17 C 8893, 2018 WL 1920184, at *3 (N.D. Ill. Apr. 24, 2018) (dismissing CFAA claim for lack of requisite specificity in alleging harm); *Modrowski v. Pigatto*, No. 09 C 7002, 2010 WL 2610656, at *2 (N.D. Ill. June 25, 2010) (same).

Finally, the Court harbors concern that Fowlkes' action might suffer from a lack of personal jurisdiction. She alleges that each of the defendants lives outside of Wisconsin. For a court to exercise personal jurisdiction over an out-of-state defendant, "the key issue for constitutional purposes is whether the defendant has sufficient 'minimum contacts' with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012) (quotation and internal marks omitted). In this case, each defendant must have purposely established minimum contacts with Wisconsin "such that he or she should reasonably anticipate being haled

into court" here. *Id.* (quotation omitted). If Fowlkes submits an amended complaint that sufficiently states a claim for relief, the Court will undertake an analysis to determine whether or not it has personal jurisdiction over the defendants for purposes of hearing that claim.

The Court must, therefore, strike the current complaint, but it will afford Fowlkes an opportunity to submit an amended complaint correcting the above-described defects. If Fowlkes wants to proceed, she must file an amended complaint on or before **June 28, 2018**. Failure to file an amended complaint within this time period may result in dismissal of this action. Fowlkes is advised that the amended complaint must bear the docket number assigned to this case and must be labeled "Amended Complaint." Fowlkes is further advised that a successful complaint alleges "the who, what, when, where, and how: the first paragraph of any newspaper story." *See DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

The amended complaint supersedes the prior complaint and must be complete in itself without reference to the original complaint. *See Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1056-57 (7th Cir. 1998). In *Duda*, the Seventh Circuit emphasized that, in such instances, the "prior pleading is in effect withdrawn as to all matters not restated in the amended pleading[.]" *Id.* at 1057 (citation omitted); *see also Pintado v. Miami-Dade Housing Agency*, 501 F.3d 1241, 1243 (11th Cir. 2007) ("As a general matter, '[a]n amended pleading supersedes the former pleading; the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary.'") (quoting *Dresdner Bank AG, Dresdner Bank AG in Hamburg v. M/V OLYMPIA VOYAGER*, 463 F.3d 1210, 1215 (11th Cir. 2006)). If an amended complaint is received, it will be screened pursuant to 28 U.S.C. § 1915(e)(2)(B).

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for leave to proceed *in forma pauperis* (Docket #2) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's complaint (Docket #1) be and the same is hereby **STRICKEN**; and

**IT IS FURTHER ORDERED** that Plaintiff shall file an amended complaint on or before **June 28, 2018**.

Dated at Milwaukee, Wisconsin, this 7th day of June, 2018.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge