# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| CHARMAINE T. FOWLKES,<br><br>                    Plaintiff,<br><br>v.<br><br>JOHNNY CABRAL, KRISTAN YOUNG SORRELL, and ASHLEY TANNER,<br><br>                    Defendants. | Case No. 18-CV-231-JPS<br><br>**ORDER** |

      Plaintiff Charmaine T. Fowlkes ("Fowlkes"), proceeding *pro se*, filed a complaint in this matter and a motion for leave to proceed *in forma pauperis*, meaning without prepayment of the filing fee. (Docket #1, #2). The Court granted Fowlkes' motion to proceed without prepayment of the filing fee but struck her complaint because it failed to state a claim for relief. (Docket #5). The Court permitted Fowlkes to file an amended complaint, explaining that, like her first complaint, the amended complaint would be screened to determine if it states a claim for relief. *Id.* at 8; 28 U.S.C. § 1915(e)(2)(B). Fowlkes has filed an amended complaint, (Docket #6), and the Court will screen it. The same standards for screening set out in the Court's previous order apply in equal force here. *See* (Docket #5 at 2–3).

      The thrust of Fowlkes' amended complaint is the same as her original complaint. She alleges that she was previously employed by Amazon.com, and during her employment, her supervisor, Johnny Cabral ("Cabral"), continuously harassed her and prevented her advancement at the company. *See generally* (Docket #6). Fowlkes believes that Cabral somehow accessed her computer and personal devices remotely and then

installed malware or somehow manipulated her programs and data in order to harass her. *Id.* at 3–4. She alleges that she received incoming phone calls from numbers that did not appear to match the caller or had no one on the line when she picked up, and she seems to attribute this to Cabral. *Id.* at 4. She alleges that the data usage for her household went up significantly, and she seems to imply this is Cabral's fault. *Id.* She alleges that she once received a notification from Google that "Johnny" was "scanning [her] personal computer." *Id.* She was assigned a new supervisor, Ashley Tanner ("Tanner"), who Fowlkes believes either failed to stop or facilitated Cabral's harassment. Fowlkes also reached out to Kristan Young Sorrell ("Sorrell"), whose title is still unclear, and she apparently did not address the harassment either. *Id.*

When the Court screened Fowlkes' original complaint, it noted that because the thrust of her complaint centered on alleged computer misconduct, the most suitable avenue for relief would be under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030. The CFAA prohibits any person from, among other things: (a) "access[ing] a protected computer without authorization" so as to perpetuate a fraud and "obtain anything of value"; (b) knowingly "caus[ing] the transmission of a program, information, code or command" so as to intentionally cause damage to a protected computer; or (c) accessing a protected computer without authorization, in a manner that causes "damage" to the computer. *Id.* § 1030(a)(4), (a)(5). A "protected computer" is broadly defined as any computer "used in interstate or foreign commerce or communication." *Id.* § 1030(e)(2)(B).

The Court explained that although Fowlkes had alleged that she used her computer in interstate commerce, thereby satisfying the

"protected computer" element of the claim, her allegations as to the other elements of a CFAA claim fell short. For example, she did not state a claim under Section 1030(a)(4) because she did not allege that Cabral intended to defraud her or that he "obtain[ed] anything of value" through his unauthorized access to her computer. *Id.* § 1030(a)(4). She did not state a claim under Section 1030(5) because she did not allege damage to her computer. More fundamentally, she also did not sufficiently allege harm. The CFAA requires that a plaintiff allege one of several enumerated "factors of harm," of which the closest fit for Fowlkes' claim is set forth in Section 1030(c)(4)(A)(i)(I). Under that subsection, Fowlkes must allege that she suffered at least $5,000 in economic damages within one year. *Id.*; 18 U.S.C. § 1030(g). Fowlkes did not allege that any of the defendants' acts caused her any economic harm whatsoever. Though she sought $100,000 in damages, she did not explain those damages in any detail or allege that those damages were in any way connected to the defendants' misconduct.

In her amended complaint, Fowlkes explains that she seeks damages of "$30,000 per person for their part in the harassment and $10,000 for the loss of income due to the harassment." (Docket #6 at 2). She does not include allegations to support these amounts; she merely indicates that she intended to apply for a "higher level position" but the "discrimination and harassment has prevented that action from taking course." *Id.*

Simply put, Fowlkes' amended complaint does not sufficiently allege harm that is remediable under the CFAA. That statute is not meant to compensate for harassment; it is intended to prohibit fraudulent conduct on protected computers and to compensate for computer damage or theft. *See Fidlar Techs. v. LPS Real Estate Data Sols., Inc.*, 810 F.3d 1075, 1084 (7th Cir. 2016) (discussing the purpose of Sections 1030(a)(4) and 1030(a)(5)(A)).

Damage to Fowlkes' reputation, emotional distress, and lost earnings are not compensable under the CFAA. *See Combier v. Portelos*, No. 17-CV-2239 (MKB), 2018 WL 3302182, at *10 (E.D.N.Y. July 5, 2018), *report and recommendation adopted*, No. 17CV2239MKBRLM, 2018 WL 4678577 (E.D.N.Y. Sept. 29, 2018).

Further, Fowlkes also does not allege sufficient factual matter to permit a "reasonable inference," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), that the defendants were involved in causing the mysterious computer problems she alleges. *See Omari v. Ras Al Khaimah Free Trade Zone Auth.*, No. 16 CIV. 3895 (NRB), 2017 WL 3896399, at *11 (S.D.N.Y. Aug. 18, 2017), *aff'd sub nom. El Omari v. Kreab (USA) Inc.*, 735 F. App'x 30 (2d Cir. 2018) (Plaintiff's speculative allegations that defendants had engaged in unauthorized access of his website were insufficient to state a claim under the CFAA.). She must provide some factual content plausibly connecting the defendants to the misconduct alleged, and her unsubstantiated theory that her supervisors had an animus against her and somehow caused myriad strange technical problems for her is not sufficient. For all of these reasons, the Court finds Fowlkes has failed to state a claim under the CFAA.

The Court moves on, then, to endeavor to identify any other claim Fowlkes has plausibly alleged in her amended complaint. The material differences between Fowlkes' original and amended complaints are that she seeks to add several claims, mostly based on state law (she references the Wisconsin Statutes sections for fair employment, discrimination, internet privacy, and parties to a crime), and she mentions for the first time the she is African American, with reference to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII").

First, Fowlkes' allegations related to her race do not state a claim for relief under Title VII. Federal law does not protect employees from being suspended or terminated without cause. It does prohibit employers from terminating people based on certain characteristics, including race. *See* 42 U.S.C. § 2000e-2(a)(1). Fowlkes alleges that she was the only African American female who reported to Cabral, (Docket #6 at 2), but she says nothing to connect her race to her having been reprimanded or terminated. Indeed, she does not allege that Cabral ever took her race into account. While working for Amazon.com, Fowlkes apparently received calls during which she was met with offensive language and terms known to discriminate against African Americans, and she complained about receiving those calls. *Id.* at 4. But she does not provide factual material connecting those calls to her employer, or connecting her complaints about them to any adverse employment action against her. Her allegations are not sufficient to state a claim of racial discrimination under Title VII.

Next, as to Fowlkes' references to Wisconsin state employment and privacy statutes, even if her allegations were sufficient to state claims under those laws, the Court would only exercise jurisdiction over them if it had proper subject matter jurisdiction over the case either based on an alleged federal question or based on diversity of citizenship. *See* 28 U.S.C. §§ 1331, 1332, 1367. As explained above, Fowlkes has not stated a federal claim under the CFAA or Title VII, and the Court finds no basis for any other federal claim. The Court also does not detect a basis for diversity jurisdiction. In her original complaint, Fowlkes stated or implied that Cabral lived in Arizona, Tanner in Washington, and Sorrell in West Virginia. (Docket #1). Fowlkes does not repeat those allegations in her amended complaint, but even if these defendants are indeed all citizens of

different states than Fowlkes, who lives in Wisconsin, the amount in controversy does not exceed $75,000, as is required for the exercise of diversity jurisdiction. 28 U.S.C. § 1332. Fowlkes seeks damages of "$30,000 per person for their part in the harassment and $10,000 for the loss of income due to the harassment," (Docket #5 at 2), but she does not include allegations to support these amounts. The Court finds that the amount in controversy, if any, does not meet the threshold for diversity jurisdiction.

Finally, if the defendants are all citizens of different states as Fowlkes originally pled, the Court would find that it lacks personal jurisdiction over them. The Court flagged the personal jurisdiction issue in its previous order, (Docket #5 at 7–8), and Fowlkes has not provided allegations to assure the Court that the defendants have sufficient minimum contacts with Wisconsin for this Court to exercise personal jurisdiction over them.

The Court will dismiss the federal claims alleged in Fowlkes' amended complaint for failure to state a claim upon relief can be granted and will decline to exercise jurisdiction over the state law claims alleged in her amended complaint. 28 U.S.C. § 1367(c)(3). This case will be dismissed in its entirety.

Accordingly,

**IT IS ORDERED** that the federal law claims in Plaintiff's amended complaint (Docket #6) be and the same are hereby **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim;

**IT IS FURTHER ORDERED** that the Court, pursuant to 28 U.S.C. § 1367(c)(3), declines to exercise supplemental jurisdiction over the state law claims raised in the Plaintiff's amended complaint and the Plaintiff's state law claims (Docket #6) be and the same are hereby **DISMISSED without prejudice**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 6th day of March, 2019.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge